## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

YUMENG WANG,

                Plaintiff,

       v.

SLM CORPORATION d/b/a SALLIE MAE,

                Defendant.

Civil Action No. 23-1240-GBW

---

## <u>MEMORANDUM ORDER</u>

Pending before the Court is Defendant SLM Corporation d/b/a Sallie Mae's ("Defendant" or "SLM") Motion to Dismiss Plaintiff Yumeng Wang's ("Plaintiff" or "Ms. Wang") Amended Complaint (D.I. 6). D.I. 10. Plaintiff opposes Defendant's Motion. D.I. 12. Having reviewed Defendant's Motion and all related briefing, the Court: (1) GRANTS Defendant's Motion as to Plaintiff's quid pro quo sexual harassment claim on grounds that Plaintiff failed to allege that she suffered an adverse employment action; (2) GRANTS Defendant's Motion as to Plaintiff's hostile environment sexual harassment claims on grounds that Plaintiff failed to allege that Defendant had constructive knowledge of a sexually hostile environment; and (3) GRANTS Defendant's Motion to Dismiss Count III of the Amended Complaint pursuant to the exclusivity provision of the Delaware Workers' Compensation Act. As the Court does not find that further amendment would be futile, Plaintiff's request for leave to amend is GRANTED.

1

## I.    LEGAL STANDARD[1]

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). But the Court will "'disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements.'" *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).

"'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)), *aff'd*, 2018 WL 11446482 (3d Cir. Apr. 6, 2018). Rule 12(b)(6) requires the court to accept all factual allegations in the complaint as true and view them in the light most favorable to plaintiff. *Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 351 (3d Cir. 2020). "A motion to dismiss 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled

---

[1] The Court writes for the benefit of the parties who are already familiar with the pertinent background facts.

to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Burlington Coat Factory*, 114 F.3d at 1420).

## II.   ANALYSIS

### A. Plaintiff Has Not Sufficiently Pled Quid Pro Quo Sexual Harassment.

Quid pro quo harassment takes place when an employee's "response to unwelcome [sexual] advances was subsequently used as a basis for a decision about compensation, terms, conditions, or privileges [of] employment." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281–82 (3d Cir. 2000) (internal quotation marks omitted, alterations adopted).  To withstand a Rule 12(b)(6) motion, a plaintiff alleging quid pro quo harassment must plead facts showing either (1) that she submitted to sexual advances based on the quid pro quo offer or threat or (2) that a harasser took tangible employment action based on her refusal to submit to his/her sexual advances or demands.  *See Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 27 (3d Cir.1997).  Where quid pro quo harassment is pled under the latter theory, the plaintiff must allege that an adverse employment action resulted from her refusal to comply with the unwanted sexual advances.  *Id.*  In such a case, the adverse employment action must be one which causes a "*significant change* in [the plaintiff's] employment status ... or ... benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 743, 753–54 (1998) (emphasis added).

Plaintiff contends that the Amended Complaint sufficiently pleads a prima facie case for quid pro quo sexual harassment by alleging that Plaintiff was invited to engage in unwelcome sexual advances with her supervisor, Mr. Ding, in exchange for a promotion.  D.I. 12 at 8.  Specifically, the Amended Complaint alleges that, on September 27, 2022, Mr. Ding called Plaintiff to his office and "stated that he would give [Plaintiff] the chance to be promoted into a Director role if she could 'convince' him." D.I. 6, ¶¶ 35-36.  The Amended Complaint adds that

"[i]t was very apparent that Mr. Ding's attitude was that, if [Plaintiff] did not allow him to grope and assault her as he pleased, she would not get the promotion." *Id.*, ¶ 37. When Plaintiff declined his advances, Plaintiff alleges that she was subject to an adverse employment action, "as she never received the Director role that [Mr. Ding] offered her in exchange for sexual conduct." D.I. 12 at 8. According to Plaintiff, she suffered an additional adverse employment action after Defendant learned of the misconduct and terminated Mr. Ding's employment when "she was improperly denied her requested administrative leave in order to deal with the ongoing effects of the harassment." *Id.* at 5.

Defendant responds that neither allegation amounts to an adverse employment action. D.I. D.I. 13 at 2-3. As to Plaintiff's allegations that she was denied a promotion to a "Director position," Defendant contends that Plaintiff "does not allege she actually applied for any specific director position;" that "she was qualified for a promotion to a director position;" or "that such a position was awarded to someone not in her protected class." D.I. 10 at 10. Rather, according to Defendant, Plaintiff relies on conclusory allegations referencing "vague suggestion[s]" by Mr. Ding "that he would give her a '***chance to be promoted***' to some unspecified director role . . . ." *Id.* (emphasis added). Defendant contends that these allegations are insufficient to show that Plaintiff suffered a tangible adverse employment action. *Id.*

While, generally, the denial of a promotion is considered an "adverse action" for purposes of Title VII harassment claims,[2] the Court agrees with Defendant that Plaintiff fails to allege sufficient facts that her refusal to comply with Mr. Ding's advances resulted in a "significant change" in her employment. As Defendant notes, Plaintiff still holds the very position she held at the time of Mr. Ding's alleged conduct. Moreover, while Plaintiff alleges that she was not given

---

[2] *Ellerth*, 542 U.S. at 761.

4

a promotion to a "Director position," the Amended Complaint alleges only that Mr. Ding promised Plaintiff "the chance to be promoted." D.I. 10 at 9. Such a promise does not support Plaintiff's claim that she suffered a tangible change to her employment. The Third Circuit's decision in *Sousa v. Amazon.Com, Inc.*, No. 1:21-CV-717-SB, 2022 WL 4548910, at *6 (D. Del. Sept. 29, 2022), *aff'd*, No. 22-3043, 2023 WL 7486751 (3d Cir. Nov. 13, 2023) is persuasive on this issue.

In *Sousa*, the plaintiff alleged that she suffered quid pro quo sexual harassment after declining a supervisor's sexual advances that "came with hints about promotion." *Id.* In finding that the plaintiff failed to allege an adverse employment action, the district court explained that plaintiff did not allege that rebuffing the sexual advances "resulted in a 'significant change' to her employment situation." *Id.* The Third Circuit agreed with the district court and added that Plaintiff "alleged nothing about the qualifications of either the man who received the promotion or her own qualifications." 2023 WL 7486751 at *5 (emphases added). Thus, the Third Circuit held that plaintiff's allegations of a hinted promotion were not enough to establish that "her rejection of [her supervisor] led to any *significant* employment decisions." *Id.*

The Court similarly finds that Plaintiff's allegations that Mr. Ding offered Plaintiff "the chance" at a promotion are insufficient to support her quid pro quo harassment claim. To make such a claim, Plaintiff must allege that her rejection of Mr. Ding's unwanted advances led to a *tangible* and *significant* change in her employment status. Yet, the Amended Complaint does not provide any further information specifying what position was offered or whether Plaintiff was even qualified for the promotion to such a position. Without more, Plaintiff's allegation that Mr. Ding implied that she would have a "chance" at a promotion to a vague "Director position" does not support Plaintiff's claim that Defendant's failure to promote Plaintiff to "Director" was an adverse action taken because of Plaintiff's rejection of Mr. Ding's advances.

The Court is also not persuaded that Defendant's refusal to grant Plaintiff's request for extended leave constitutes an adverse employment action. Indeed, Plaintiff does not plead that any terms of her employment entitled her to such relief. *Cf. Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 153 (3d Cir. 1999) (finding adverse action where an employer denied the plaintiff access to files and objects that "were vital to her work," thus causing a "significant disruption in [] her working conditions"). Indeed, Defendant's decision denying Plaintiff's request for extended leave did not result in a significant change to Plaintiff's employment status given that Plaintiff continued to hold the same position at the Company. Moreover, Plaintiff fails to explain how such leave was vital to Plaintiff's work and responsibilities as a Senior Manager of Statistical Modeling. *See Colston v. Cleveland Pub. Libr.*, 522 F. App'x 332, 339 (6th Cir. 2013) ("[D]enial of time off does not constitute an 'adverse employment action' because it did not materially change the terms and conditions of her employment."). While extended administrate leave "may have been preferred [by] or desirable" to Plaintiff, especially as she coped with "the ongoing effects of the harassment," D.I. 12 at 5, "the loss of this preference was just that—a lost preference." *Klingensmith v. Armstrong Sch. Dist.*, No. 2:22-CV-743-NR, 2022 WL 17904246, at *3 (W.D. Pa. Dec. 23, 2022) (finding that a "lost preference cannot establish an adverse employment action"). Thus, it is not sufficient to support Plaintiff's claim that denying Plaintiff's leave was an adverse employment action.

Because Plaintiff failed to sufficiently plead that she suffered an adverse employment action, Defendant's Motion to Dismiss Plaintiff's quid pro quo sexual harassment claim is GRANTED without prejudice and with leave for Plaintiff to amend.

**B. Plaintiff Has Not Sufficiently Pled Sexual Harassment under a Hostile Work Environment Theory.**

To state a hostile work environment sexual harassment claim, a plaintiff must allege facts sufficient to show that "(1) the employee suffered intentional discrimination because of [his or her] sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability." *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997). Defendant argues that Plaintiff's hostile work environment claim fails because "there is no basis for respondeat superior liability" in the Amended Complaint. D.I. 10 at 10–11. For the following reasons, the Court agrees.

In pleading facts to support a prima facie case for respondeat superior liability, plaintiff must allege that his/her employer knew or should have known about the harassment and "failed to take prompt remedial action." *Bonenberger*, 132 F.3d at 25. "[A]n employer knew or should have known about workplace [racial] harassment if management level employees had actual or constructive knowledge about the existence of a sexually hostile environment." *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 105 (3d Cir. 2009) (internal citations omitted). A plaintiff may allege constructive knowledge if the plaintiff pleads that "the harassment is 'so pervasive and open that a reasonable employer would have had to be aware of it.'" *Poe-Smith v. Epic Health Servs., Inc.*, No. CV 16-660-LPS, 2017 WL 915139, at *3 (D. Del. Mar. 8, 2017) (citation omitted).

According to Plaintiff, the Amended Complaint sufficiently pleads respondeat superior liability by alleging that "Defendant had constructive notice of the harassment and knew or should have known that Mr. Ding was engaging in sexual harassment long before it took any action against him." D.I. 12 at 10. Specifically, Plaintiff highlight allegations in the Amended Complaint

7

accusing Mr. Ding of engaging in sexual harassment towards several female employees. *See* D.I. 6, ¶ 30. Plaintiff adds that the Amended Complaint "further indicate[s] that Defendant did, in fact, know about the harassment for years prior to taking any action," since the Amended Complaint alleges that Mr. Ding informed his reports during a team meeting in 2019 that someone had reported Mr. Ding and warned that the employees should not do so again. D.I. 12 at 11-12. Plaintiff contends that Mr. Ding's comments during the 2019 meeting reveal that Defendant was aware of at least one harassment report against Mr. Ding and still "continued to employ him in a supervisory capacity" without doing anything to address his conduct. *Id.* Plaintiff therefore argues that Defendant had constructive notice of the existence of a hostile work environment at least by the date of the 2019 complaint. *Id.*

Defendant disputes Plaintiff's claim that the 2019 complaint supports Plaintiff's argument that Defendant had actual and/or constructive knowledge of Mr. Ding's harassment. D.I. 13 at 5-6. According to Defendant, "[t]he Amended Complaint includes no facts describing by whom the 2019 report was made, to whom it was made, the nature of the report, or, most critically, whether the alleged report notified SLM that Ding was engaging in *sexually harassing conduct*." *Id.* at 6. While, at this early stage, Plaintiff is not required to disclose exactly who made the 2019 complaint or how the complaint was brought to Defendant, the Court agrees that Plaintiff's allegations regarding the 2019 complaint fall short of establishing Defendant's constructive knowledge because Plaintiff does not allege that the 2019 complaint involved *sexual* harassment. *See Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 294-295 (3d Cir. 1999) ("[W]hen employees' complaints do not refer to *sexually* offensive behavior, employers are not on constructive notice of sexual harassment.") (emphasis in original). In *Mack v. Greenville Ret. Cmty., LLC*, No. 00-470-GMS, 2001 WL 1286752, at *4 (D. Del. Oct. 23, 2001), a court found that plaintiff failed to plead

constructive knowledge where the employee alleged that she reported to supervisors that a co-worker was "messing with [her]." In finding that the alleged complaint was not enough "to put her supervisors on notice" of sexual harassment, the *Mack* court emphasized that her complaint did not refer to sexually offensive behavior. *Id.* Similarly, here, Mr. Ding's alleged comments regarding the 2019 complaint are insufficient evidence of Defendant's knowledge of Mr. Ding's *sexual* harassment.

Similar to the instant action, plaintiff in *Mack* also alleged that her employer had constructive knowledge of the sexual harassment because the harassment was so pervasive that "everyone knew." The *Mack* court found this allegation unpersuasive because plaintiff "fail[ed] to bring forth concrete evidence of even one person's knowledge of [the harassment]. In fact, two cooks who worked side-by-side with Stevens provided affidavits declaring that they had never witnessed Stevens sexually harass Mack." *Id.* Similarly, here, Plaintiff argues that Defendant "would have had reason to know about" Mr. Ding's harassing acts because "Mr. Ding engaged in sexual harassment towards multiple employees." D.I. 12 at 11. However, the Amended Complaint alleges that Plaintiff's "female peers were also harassed *in some way* by Mr. Ding . . . ." D.I. 6, ¶ 30 (emphasis added). The Amended Complaint does not clarify whether the harassment of the other female employees was sexual. Moreover, while the Amended Complaint asserts that Mr. Ding's sexual harassment of Plaintiff was reported to the company by Plaintiff's colleague, Changchang Xiao, this allegation shows that at least one other employee was aware of Mr. Ding's harassment of Plaintiff. However, it is not sufficient to support Plaintiff's claims that Defendant turned a blind eye to overt sexual misconduct by Mr. Ding. *See id.*, ¶ 49.

Accordingly, the Court finds that Plaintiff has failed to allege that Defendant had constructive knowledge of Mr. Ding's sexual harassment. Defendant's Motion to Dismiss

Plaintiff's Title VII hostile environment claim is therefore GRANTED without prejudice and with leave for Plaintiff to amend.[3]

### C. The Amended Complaint Fails to Demonstrate that Count III is Not Barred by the Delaware Workers' Compensation Act.

Count III of the Amended Complaint alleges that Defendant was negligent in hiring, retaining, and supervising Mr. Ding, thus allowing him "to engage in harassment towards employees, and particularly towards employees over who he held a supervisory role . . . ." D.I. 6, ¶ 77. Defendant maintains that such a claim is barred by the exclusivity provision of the Delaware Workers' Compensation Act, which bars common law negligence actions against an employer "'for personal injury caused by the on-job sexual harassment by co-employees.'" D.I. 10 at 19-20 (citing *Konstantopoulos v. Westvaco Corp.*, 690 A.2d 936, 939 (Del. 1996)). Plaintiff responds that "'Delaware [] recognize[s] an exception to the Workers' Compensation Exclusivity Doctrine for acts that involve intent by the employer to injure the employee.'" D.I. 12 at 18. According to Plaintiff, its negligence claim can be pursued under this exception

---

[3] Defendant argues that Plaintiff's hostile environment claim is also barred by the so-called "Faragher/Ellerth Defense, which holds that respondeat superior liability cannot be imputed onto an employer if the employer can show: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257. While Defendant contends that it exercised reasonable care to prevent and correct Mr. Ding's sexual harassment after it was reported to the company by Plaintiff's colleague, Ms. Xiao, in 2022, the Court agrees that the first element of the Faragher/Ellerth Defense may depend on whether the 2019 complaint placed Defendant on notice of Mr. Ding's sexually harassing behavior. D.I. 12 at 13 (arguing that Defendant did not exercise reasonable care to prevent Mr. Ding's misconduct because, "[a]s set forth in the Amended Complaint, Mr. Ding's harassment had already been reported in 2019, and was clearly not effectively addressed").

"because Mr. Ding deliberately assaulted Ms. Wang and Defendant deliberately allowed Mr. Ding to remain employed in a supervisory capacity." *Id.* at 17.

Unlike Plaintiff, the Court finds that the Amended Complaint fails to allege sufficient facts demonstrating that Defendant had the specific intent to injure Plaintiff or any other employees. As Defendant notes, the exception cited by Plaintiff, known as the "intentional conduct doctrine, is a limited exception to exclusivity provision of the Delaware Workers' Compensation Act. D.I. 13 at 9. "Under the intentional conduct doctrine, for a complaint to survive a motion to dismiss, there must be more than a mere allegation that there was an intentional injury; there must be facts alleged which, if true, show a deliberate intent to bring about an injury." *Rafferty v. Hartman Walsh Painting Co.*, 760 A.2d 157, 160 n. 12 (Del. 2000). In other words, an employee relying on this exception must show that the employer acted with the specific intent to injure the employee. *Segura v. M Cubed Techs., Inc.*, No. N18C-01-249, 2019 WL 1504048 at *2 (Del. Super. Ct. Apr. 4, 2019) ("To survive a motion to dismiss, the employee must allege specific facts which, if true, show a deliberate intent to bring about an injury.") (internal citations omitted).

Plaintiff contends that the Amended Complaint "demonstrate[s] that Defendant engaged in an intentional act in the hiring, retention and supervision of Mr. Ding." D.I. 12 at 18. To support this claim, Plaintiff again relies on the 2019 complaint as evidence that "Defendant knew and/or had reason to know of Mr. Ding's unlawful acts and yet allowed Mr. Ding to remain employed, and in a supervisory capacity." *Id.* However, as discussed *supra*, the Court cannot assume that the 2019 complaint put Defendant on notice of Mr. Ding's *sexual* harassment of employees because Plaintiff does not allege that the previously reported harassment was sexual in nature. Accordingly, Plaintiff fails to allege facts supporting its claim that "Defendant knew

11

and/or had reason to know of Mr. Ding's unlawful acts and yet allowed Mr. Ding to remain employed, and in a supervisory capacity," and the Amended Complaint does not support Plaintiff's claim that Defendant engaged in an intentional act to injure Plaintiff.

Given the above, Defendant's Motion to Dismiss Count III is GRANTED without prejudice and with leave for Plaintiff to amend.

## III.    CONCLUSION

For the foregoing reasons, Defendant's Motion is GRANTED as follows.

\* \* \*

WHEREFORE, at Wilmington this 15th day of July, 2024, **IT IS HEREBY ORDERED** that:

1. Defendant SLM Corporation d/b/a Sallie Mae's ("Defendant" or "SLM") Motion to Dismiss (D.I. 10) Plaintiff Yumeng Wang's Amended Complaint (D.I. 6) is **GRANTED WITHOUT PREJUDICE** as to Plaintiff's: (1) Title VII sexual harassment under a quid pro quo theory; (2) Title VII hostile work environment sexual harassment claim; and (3) Count III of the Amended Complaint.

2. Plaintiff's request for leave to amend the Amended Complaint is **GRANTED**, and Plaintiff must file an amendment on or before **August 5, 2024**.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE